SAMUEL P. WALDRON ET AL., RELATORS, v. JAMES A. ROWE AND AUGUST SOFFEL, RESPONDENTS.

Submitted July 5, 1917—Decided November 8, 1917.

Under the act entitled "An act concerning the government of cities of the first class" (*Pamph. L.* 1907, *p.* 705; *Comp. Stat., p.* 964), the mayor of Newark may appoint a city auditor for a term to run out contemporaneously with his own, and such appointment does not require the consent of the council to make it effective.

On *quo warranto*.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KALISCH.

For the relators, *Pitney, Hardin & Skinner.*

For the respondent Rowe, *Hubert J. Rowe.*

For the respondent Soffel, *Harry Kalisch.*

The opinion of the court was delivered by

PARKER, J.　The information charges both Rowe and Soffel with usurpation of the office of city auditor of the city of Newark. As the case has developed on the record and briefs, the question to be determined is, Which one of them was, at the date of filing the information, entitled to the office? And the determination of this question depends upon the effect to be given to the act of 1907 (*Pamph. L., p.* 705, superseding *Pamph. L., p.* 680; *Comp. Stat., p.* 964, *pl.* 1376), entitled "An act concerning the government of cities of the first class," and which is commonly known as the "Ripper Act." It is in two sections, the second being a repealer of inconsistent legislation, and the first reading as follows:

"In cities of the first class the term of office of all city officers, members of city boards and other employes appointed by the mayor thereof, whether for a definite or an indefinite term, shall expire with the term of such mayor, and the successors of such officers, members of city boards and employes shall be appointed by the incoming mayor, and shall hold such positions during the term of the mayor so appointing, but the provisions hereof shall not apply to the offices of city treasurer and city comptroller in said cities."

The act is applicable to Newark as a city of the first class.

Under the city charter, as amended, the auditor was elected for a three-year term. *Pamph. L.* 1859, *p.* 478, § 10.

In 1873, the method of selection was changed to appointment by the mayor, by and with the consent of the council. *Pamph. L., p.* 322, § 18.

In 1881, the legislature enacted that any city officer holding for a fixed term shall continue to hold over after the expiration of his term "until his successor has been appointed and

qualified." *Pamph. L., p.* 47, *ch.* 43. Respondent Rowe claims under this act, as will presently appear.

The act of 1907 was held constitutional in *McCarthy* v. *Queen,* 76 *N. J. L.* 144; *affirmed, Id.* 828. It seems to have been generally recognized as applicable to all officials of Newark appointed by the mayor, whether with or without the consent of council; certainly, so far as related to the city auditor, for, on January 1st, 1909, an auditor was appointed by the new mayor for two years, being the term for which such mayor was elected; and the same action was taken at the beginning of the mayoralty terms on January 1st, 1911, and January 1st, 1913, when Rowe was appointed. On these three occasions confirmation by the council seems to have been considered necessary under the act, or at least desirable, for the several appointments were in fact confirmed.

On January 1st, 1915, the situation was that of a council out of harmony with the new mayor. The latter sent to the council the nomination of respondent Soffel for a two-year term and it was laid on the table. The same thing occurred a year later, when the name was sent in for a one-year term. Again, on January 1st, 1917, the mayor sent in the name of Soffel for a two-year term, and it was once more laid on the table. The next day, evidently on the theory that the act of 1907 entitled him to make the appointment irrespective of consent by the council, he notified the city clerk in writing of the appointment of Soffel, who thereupon gave bond and took the required oath, and attempted to take possession of the office, but was partly prevented by Rowe, who claims to be entitled to hold over on the ground that no successor to himself had been legally appointed and qualified.

From what has been said it is plain that if the act of 1907 applies to the office of city auditor of Newark, and if under that act confirmation of the mayor's appointment is necessary, Rowe is entitled to the office as holding over until his successor is appointed and qualified. If the act is applicable and does away with the requirement of consent of the council, Soffel was legally appointed and qualified, and Rowe's term came to an end on January 2d, 1917.

The intent of the legislature in enacting this statute is well expressed in the opinion of this court in *McCarthy* v. *Queen, supra* (at *p.* 149), where Mr. Justice Trenchard, speaking for the court, said:

"The tendency of modern legislation in the government of populous cities is to place the powers of appointment in a single centre, and the reasons therefor are numerous and may well be regarded as valid. The mayor of the city is chosen directly by the people and is held largely responsible for the policy of the government, and in the largest cities his powers of appointment of the officials who constitute the governing power of the city have been greatly increased beyond the powers of the executives of other less populous municipalities. The machinery of government of cities necessarily has relation to the individuals who carry on that government, as the individual views of the governing officials necessarily direct the policy of the government of the city, and the laws which provide for the appointment and termination of office of such individuals are necessarily a part of the machinery of such government. Presumably, the intendment of the statute in question is that in large, populous cities—*i. e.,* cities of the first class—the governing officials shall be in accord with the chief executive, who is directly elected by the people, in order that the whole scheme of the policy of the city government may be stamped with the approval or disapproval of the governed upon the election of their chief magistrate."

This language, approved by the Court of Errors and Appeals, must be our guide; and a moment's thought will make it clear that the intent of the act, so far from being aided, will in large measure be defeated if a new mayor, upon whom is placed the responsibility of the entire city administration, is to be powerless to call to his aid officials of his own choosing, and must accept those satisfactory to a body perhaps (and in the case at bar, actually) not in accord with him. Naturally, an interpretation so subversive of the object of the act will be avoided if possible.

It is true that the clause "appointed by the mayor" occurs twice in the act of 1907, first in describing the class of officials to be affected, and later in providing for their appointment and tenure. The general rule is, that where a word or phrase occurs more than once in a statute, it should have the same meaning throughout, unless there is clear indication to the contrary. *Den ex dem. James* v. *DuBois,* 16 *N. J. L.* 285, 293; *Cozzens* v. *Slack,* 52 *Id.* 113, 115. But the rule is not an absolute one; and cases occur where a proper application of a statute requires it to be disregarded. Such a case was *In re Lang,* 77 *Id.* 207; *affirmed,* 76 *Id.* 829, where the word "insane" was held to vary in meaning. If a strict adherence to it will defeat the object of the act, it is inapplicable. *Henry* v. *Trustees,* 48 *Ohio St.* 671; 30 *N. E. Rep.* 1122.

Our conclusion is that the first use of the phrase in the act was intended to make the act applicable in first-class cities where tenure of office originates in appointment by the mayor, with or without subsequent approval by the council; and that in "appointing" such officers for a term co-extensive with his own the legislature intended that the mayor should exercise undivided responsibility and be untrammeled by the requirement of obtaining the approval of another agency which could thereby curtail his powers and incidentally relieve him of much of the responsibility that the law intended to cast upon him.

There will be a judgment of ouster as against respondent Rowe. Respondent Soffel is entitled to hold the office in question.