WILLIAM T. READ, STATE TREASURER OF THE STATE OF NEW JERSEY, RELATOR, v. THE BOARD OF COMMISSIONERS OF THE CITY OF NEWARK, AND R. W. BOOTH, TREASURER OF THE COUNTY OF ESSEX, IN THE STATE OF NEW JERSEY, RESPONDENTS.

Argued November 11, 1925—Decided March 1, 1926.

**Taxes and Assessments—State Road Tax and State Institutional Tax Shall be Paid to the State, an Amount Determined by Applying the Statutory Rate to the Valuation of Personal Property of Public Utilities in Addition to the Ratables Used for Striking the Local Rate on "Net Valuation Taxable."**

On rule to show cause why *mandamus* should not issue.

Before Justices TRENCHARD, KATZENBACH and LLOYD.

For the relator, *Edward L. Katzenbach,* attorney-general, and *Francis H. McGee.*

For the respondent Richard W. Booth, county treasurer of the county of Essex, *Arthur T. Vanderbilt.*

For the respondent the board of commissioners of the city of Newark, *Jerome T. Congleton.*

PER CURIAM.

Chapter 262 of *Pamph. L.* 1922, *p.* 634, and chapter 172 of *Pamph. L.* 1923, *p.* 458, place the duty upon the county treasurer to pay over to the state treasurer the moneys collected from the taxing districts when and as received from the collectors or other officers having the custody of collected taxes in the taxing districts of the county.

The state treasurer claims that there is a balance due from the taxing district of the city of Newark, as its share of the road tax for the year 1924, the sum of $14,459.30, and as its

share of the institutional tax for that year the sum of $7,229.65.

The road tax is a one-mill tax, and the institutional tax is a half-mill. tax.

Application is made for a peremptory writ of *mandamus* directed to the governing body of the city of Newark and the county treasurer, commanding the board of commissioners of the city of Newark to cause to be paid. to the county treasurer the balance due and unpaid of each tax, with interest, and commanding the county treasurer to pay the balances due, with interest, as received by him within ten days thereafter, to the state treasurer.

The facts are not in dispute, but the legal duty is in question.

The Road act of 1922, chapter 262, by section 17A, provides that beginning with the year 1923 there shall be assessed each year and levied and collected, in each of the municipalities, the counties of this state, a tax sufficient to meet the interest on all outstanding bonds, proposed to be issued in the calendar year in which the tax is to be raised. The levy and assessment is required to be made upon all the real and personal property in every such municipality upon which municipal taxes are, or shall be, assessed, levied and collected, in the same manner and at the same time as other taxes upon real and personal property are assessed, levied and collected, and requires the governing body of each municipality to cause the taxes to be paid to the county treasurer as received by him. Subdivision (b) of the section provides that when the rate is by millage on the dollar of valuation, it shall apply to the valuation basis of the current year, and requires the comptroller of the treasury to certify the millage so calculated to the county treasurer of each county and the county board of taxation. The county board is then required to include the millage on the dollar of valuation so certified, in the current tax levy of the several taxing districts of the county, in proportion to the ratables as ascertained for the current year. The Institutional Tax act of 1923 authorizes

a tax to be levied, assessed and collected, for the year 1924, at the rate of one-half of a mill on each dollar of the value of all the real and personal property in every municipality, upon which municipal taxes are, or shall be, levied, assessed and collected, in the same manner and at the same time as other taxes upon real and personal property are now levied, assessed and collected. When collected the taxes are to be paid over into the state treasury, as above stated. The road tax and the institutional tax are in similar terms in so far as concerns the matter of controversy in this application.

The question involved is presented in entire good faith by all parties concerned. It is not without its difficulties. The question is whether or not the valuation of the personal property of public utility corporations, using or occupying public streets, shall be included in the valuation to which the rate of one mill in the road tax and the half-mill in the institutional tax was applied.

Chapter 25 of the laws of 1919 (at *p.* 49) provided for a franchise tax additional to that already being assessed annually on the gross receipts of public utility corporations as enumerated therein, using or occupying public streets, highways, roads or other public places, in lieu of taxation of the personal property in the municipalities which had theretofore been taxed in the respective municipalities. Such additional franchise tax or license fee was in lieu of all taxes for state, county, school and local purposes on such property. Section 2 required, however, that the same valuations and returns should be made by the assessor in each taxing district, and that the franchise taxes should be apportioned in the same manner and on the same basis as though the statute had not been passed, and section 3 required the assessing body in each taxing district to annually ascertain the value of all the personal property of such corporations and to certify them in the samer manner and at the same time as otherwise required, for the purpose of the apportionment of such franchise taxes, and further provided that the valuation of such personal property of such corporations, taxed on gross re-

ceipts, should, nevertheless, be included in and considered part of the total amount of valuations of such respective municipalities for all other purposes except the computation of the respective municipal tax rates.

At the time of the enactment of this additional franchise tax on gross receipts of public utility corporations, in lieu of taxes assessed on the personal property of such corporations, there were in force a Road Tax act and an Interstate Bridge and Tunnel Tax act, respectively designated as chapter 16 of the laws of 1917 and chapter 51 of the laws of 1918, and section 4 of the Additional Franchise Tax act provided that the tax of one mill imposed in each case, under the provisions of said Road act and Bridge and Tunnel act should be paid in each taxing district by the officer having custody of the funds to the county collector on each dollar of the value of such property of the corporations so exempted, the same as if the said act had not been passed.

We think that the legislature, in enacting the additional Franchise Tax act (*Pamph. L.* 1919, *ch.* 25), intended, in imposing the additional franchise tax, that state, county and school taxes should be imposed in the same manner, and upon the same valuations, as had been done prior to the act of 1919. The act relieved such personal property from state, county, school and local taxation, but provides, nevertheless, that the valuation of such property should be included in and considered part of the total valuations of the respective municipalities for all other purposes except of the computation of the municipal tax rate, and that intention is emphasized by the fact that the legislature specifically provided that under the Road act of 1917 and the Bridge and Tunnel act of 1918, under which taxes were then being assessed for road, bridge and tunnel purposes, should be imposed by the application of the millage to valuations, the same as if the act of 1919 had not been passed. Chapter 262 of the laws of 1922 is a continuation of road taxation as previously imposed under chapter 16 of the laws of 1917. The 1917 act provided that taxes should be assessed annually for a period of five years from the date of its passage,

namely, during the years 1918 to and including 1922; taxation for the same purpose being continued under the act of 1922, commencing with the year 1923. The earlier act of 1917 provided that there should be assessed, levied anad collected in each of the municipalities of the counties of this state a tax of one mill on each dollar of the value of all the real and personal property in every such municipality, upon which municipal taxes are, or shall be, assessed levied and collected and required them to be assessed, levied and collected in the same manner and at the same time as other taxes upon real and personal property were then assessed, levied and collected. The officer having the custody of the collected taxes was required to pay the same out of the first moneys collected to the county collector, and the county collector was required to pay the same to the state treasurer. The Road act of 1917 was construed in *Gillen* v. *Essex County Board of Taxation,* 91 *N. J. L.* 76, and the tax was said to be clearly a state tax, levied upon property classified "as property upon which municipal taxes are assessed, levied and collected." In *West Shore Railroad Co.* v. *State Board of Taxes,* 92 *Id.* 332; *affirmed, Id.* 648, it was said that the act provided for the levying and collecting in all the municipalities of the state a tax of one mill on the dollar of all real and personal property, which, when collected, in due course was to be paid to the state treasurer, to be placed by him in the state road fund. The insistence of the prosecutors (the railroads) was that, in so far as the returns by the municipalities to the state treasurer involved an increasing of the state tax imposed upon them, they were illegal and void, the contention being based upon the various railroad enactments, which subjected them to a state tax in lieu of the local tax imposed by the various taxing districts in which such properties are located, and that while the additional tax for roads was to be collected from all the taxable real and personal property in the state, it could not legally be exacted from them because of the particular status the railroads occupied under the legislation particularly affecting them and referred to in the opinion. The court further said that the issue was

whether the state board, when it received its total of local municipal aggregates for the purpose of computing of the state tax rate, could ignore the additional one mill added to the local levy and make up the state tax rate minus that added factor—that is, did the legislature, by the act of 1917, evince an intent to impose the additional one mill of taxation upon the segregated railroad property retained by the state for the purposes of taxation, as well as upon the general ratables of the state assessed locally, and pointed out that a negative to. this inquiry would result in attributing to the legislative body an intent to impose a state tax for a state purpose by a process of elimination which in its application would produce neither uniformity nor equality, and thus run counter to the constitutional inhibition. The court further said that the act under consideration must be construed as to its legislative intent in the light of all kindred legislation, adding that "the rule of construction is fundamental that when divers laws are made relating to one subject-matter, the whole must be considered as constituting one system, and mutually connected one with another," and that the act of 1917 was mandatory and required the addition of the road tax to the local rate, thus necessarily increasing the average rate of taxation when the local returns are made the basis of the computation of the state board, in accordance with the requirements of the supplement of 1906, and added: "It is to be presumed that the legislature, conscious of the legal effect and operation of existing laws, passed the act *sub judice,* for the purpose of effectuating the end that its language [taken in connection with legislation, which had established a familiar and well-understood policy of dealing with the subject of taxation, both state and municipal] must necessarily effectuate, unless the present equilibrium established as a state policy of equality, in the distribution of the public burdens, is to be seriously impaired and disturbed. Consonant with this view the rule of construction has been held to be that the mind of the legislature is presumed to be consistent, and in case of a doubtful or ambiguous expression of its will, such a construction should

be adopted as will make all the provisions of the statute consistent with each other, and with the pre-existing body of the law."

The Bridge and Tunnel act (*Pamph. L.* 1918, *ch.* 51) was of similar purport to the act of 1917 and the present act of 1922, imposing taxes for road purposes, and the institution tax of 1923 is of similar purport to the three acts mentioned. The present Road act and the Institutional act were both enacted subsequent to the Franchise Tax act of 1919. Prior to the enactment of the Franchise Tax act of 1919, the property assessed for municipal purposes included the personal property of corporations using the public streets and places, and, therefore, the valuation taken to apply the one mill tax under the earlier Road act and the Bridge and Tunnel act included the value of such personal property in each taxing district—that is, the value of the property taxed for municipal purposes included the value of such personal property, and the one mill rate was applied to that sum after the additions and deductions required by sections 510 and 511 of the Tax Revision of 1918 had been made. *Pamph. L.* 1918, *p.* 869, *ch.* 236. Since the passage of the Franchise Tax act of 1919, the value used for the striking of the municipal tax rate for the purpose of raising money for local purposes does not contain the value of the personal property of such corporations, but is listed separately, as appears by the table of ratables for the year 1924.

We think that the rate of one mill and one-half mill in the assessments for the year 1924, for road and institution purposes, should be applied to the same valuations as was done under the earlier acts for roads and bridges and tunnel purposes, and that while the valuations of the personal property of public utility corporations is not to be used for striking the municipal tax rate, it is to be used for all other purposes except for municipal purposes in accordance with the express terms of the act of 1919, that "such valuations of said property in the respective municipalities shall, notwithstanding the exemption of such property from taxation by reason of this act, nevertheless be included in and considered

14

a part of the total amount of valuations of such respective municipalities for all other purposes, except the computation of the municipal tax rates." The legislature was conscious of the legal effect and operation of existing laws, and when it used in the Road act of 1922 and the Institution act of 1923, the same words as in the earlier acts, it was no doubt the legislative intent that the same valuation should be used as a basis for these state taxes as was used under the Road act of 1917 and the Tunnel act of 1918, because these several laws must be considered as constituting one system and mutually connected with one another. While the municipalities do not assess the personal property of public utility corporations using public places, by taking the value thereof to strike the municipal tax rates, they do receive, in lieu thereof, the sums raised by way of additional franchise taxes, which are not property taxes but license taxes. *Salem, &c., Co.* v. *State Board, &c.,* 97 *N. J. L.* 386. The road tax and the institution tax were intended to be assessed as provided in the Franchise Tax act of 1919, the same as though that act had not been passed. The state treasurer is made the collecting officer for the respective state funds raised by these taxes, and the county treasurer is the ministerial officer designated by these statutes to collect the taxes from the taxing districts and pay the moneys as received over to the state treasurer. And the road tax should have been paid by applying the mill rate and the institutional tax by applying the half-mill rate to the valuation of the personal property of public utilities in addition to the ratables used for striking the local rate on 'Net Valuation Taxable.' "

In reaching this conclusion we have not overlooked the contention of the respondents that chapter 25 of *Pamph. L.* 1919 is "not a general law within the meaning of article 4, section 7, paragraph 12 of the constitution [requiring that] 'property shall be assessed for taxes under general laws and by uniform rules, according to its true value.' " The contention has heretofore been decided to be without merit. *Salem, &c., Co.* v. *State Board, &c., supra.* See, also, *Johnson* v. *Asbury,* 58 *N. J. L.* 604.

Our conclusion is that the board of commissioners of the city of Newark should be directed by peremptory writ of *mandamus* to pay to the county treasurer the balance claimed for roads amounting to $14,459.30, and for institutions $7,229.65, with interest for the amount for roads from December 20th, 1924, to date of payment, and in the case of institutions with interest on $3,614.82 from June 25th, 1924, to date of payment, and on $3,614.83 from December 25th, 1924, at six per centum per annum, and the county treasurer directed to pay such sums to the state treasurer within ten days thereafter. Such writ will be awarded.