STATE BOARD OF TAX APPEALS.

BOROUGH OF ROSELAND, PETITIONER, v. ESSEX COUNTY BOARD OF TAXATION, RESPONDENT.

BOROUGH OF CALDWELL, PETITIONER, v. ESSEX COUNTY BOARD OF TAXATION, RESPONDENT.

Decided October 22, 1940.

For the borough of Roseland, *Alfred J. Grosso.*

For the borough of Caldwell, *Philip D. Elliott, Edward R. McGlynn* and *Alfred J. Grosso.*

For the city of Newark, *James F. X. O'Brien* (by *Joseph Ward*).

For the village of South Orange, *Michael Fitzsimmons.*

QUINN, President. These applications are disposed of together, both being based upon *R. S.* 54:4-49; *N. J. S. A.* 54:4-49, and arising out of the same fact background. They were heard together by the board. We shall herein first consider the Roseland petition and the proofs adduced before us in reference thereto.

For each of the years 1936 and 1937, the borough of Roseland paid county, state, and state school taxes upon the basis of aggregate valuations of ratables in the borough, which included a figure of $4,521,600 as the valuation made by the Roseland assessor for the public utility property situate therein, and owned by Public Service Electric and Gas Company. On July 29th, 1937, however, the State Tax Commissioner revised the said valuations for purposes of apportionment of the gross receipts taxes due from the Public Service Company, under the Voorhees act and supplemental legislation (*Pamph. L.* 1900, *p.* 502; *Pamph. L.* 1917, *p.* 42; *Pamph. L.* 1919, *ch.* 25), and arrived at new figures of $3,397,827.78 for the year 1936, and $3,397,046.28 for the year 1937, upon the basis of which the gross receipts taxes for those years were apportioned and recertified to the local tax collectors on September 20th, 1937. In the light of the analysis of *R. S.* 54:4-49; *N. J. S. A.* 54:4-49, hereinafter, it becomes important to note that on the same day, September 20th, 1937, the State Tax Commissioner also recertified his valuation of the same property for the year 1935, in the sum of $3,396,000. This latter valuation was the direct result of a judgment of this board, ordering the valuation for that year to be fixed in the amount stated, entered as the determination of an appeal to the State Board of Tax Appeals by

the city of Hoboken from the original apportionment made by the State Tax Commissioner of Public Service Company gross receipts taxes for the year 1935. *Hoboken* v. *State Tax Commissioner, State Board Tax Reports,* 1936, *p.* 117, filed October 27th, 1936.

Pursuant to the directions addressed to county boards of taxation under *R. S.* 54:4-49; *N. J. S. A.* 54:4-49 (*Pamph. L.* 1918, *ch.* 236, § 510), the borough of Roseland filed with the Essex County Board of Taxation two petitions of appeal, one on January 21st, 1938, and another in November, 1939, making application for a deduction from its total valuations of ratables for succeeding years, as utlimately revised, corrected and equalized by that body, of an amount equal to the aggregate of the reductions in valuations of Public Service property for the years 1936 and 1937, represented by the reductions contained in the valuations entered for those years by the State Tax Commissioner, as having been made in pursuance of the judgment of the State Board of Tax Appeals, aforesaid.

*R. S.* 54:4-49; *N. J. S. A.* 54:4-49, under which the claims for deduction were made, reads as follows:

"Except as to any state tax at a fixed rate provided for in sections 54:4-50 and 54:4-51 of this title, each county board of taxation in apportioning the amount of money to be raised in various taxing districts for state, state school or county purposes, after having received the tax lists and duplicates of the local assessors and having revised, corrected and equalized the assessed value of all the property in the respective taxing districts, shall deduct from the total valuations of each taxing district as so revised, corrected and equalized an amount equal to the ratables of the preceding year or years of such district represented by the reduction or all reductions made in the assessments of such districts subsequent to the apportionment of the preceding year or years in consequence of any appeal or appeals to the county board of taxation or to the state board of tax appeals, or .by reason of the decision of any court, and the total valuations as ascertained after the assessments in the various assessment lists and duplicates have been revised, corrected and equalized, and after the

deductions herein provided for shall have been made, shall form the basis for the apportionment of state, state school or county taxes. When an assessment has been reduced on appeal and the decision on that appeal has been further appealed, no deduction as herein provided for shall be made with respect to the appealed assessment until the further appeal has been finally determined."

This section was originally enacted as *Pamph. L.* 1910, *ch.* 57, which provided that:

"It shall be the *duty* of the county boards of taxation, in apportioning the amount of money to be raised in the various taxing districts for state, state schools or county purposes, * * * . to deduct from the total valuations of each taxing district * * * an amount equal to the ratables of the preceding year or years, of such district, represented by the reduction or all reductions made in the assessments of such district subsequent to the apportionment of the preceding year or years, in consequence of any appeal or appeals to the County Board of Taxation or to the State Board of Equalization of Taxes, or by reason of the decision of any court * * *." (Italics supplied.)

Prior to that act there was no remedy for the unfair situation which existed when a municipality paying county and state taxes for a certain year on a basis of a specific aggregate of ratables, ultimately collected taxes on ratables of a lesser sum, because of reductions of assessments on appeal. See, for example, *Borough of Kenilworth* v. *Board of Equalization (Court of Errors and Appeals, 1909), 78 N. J. L.* 439; 74 *Atl. Rep.* 480, where the court had said:

"* * * It would be quite intolerable to hold that the apportionment of state and county taxes among the municipalities is subject to change whenever the amount of ratables is altered by successful appeals of individual taxpayers. Probably it happens every year in nearly every municipality in the state that some such reductions are made. If the apportionment to the municipalities were thereby made liable to change, a final assessment would never be possible in time to permit the collection of the tax by the day fixed by law. Frequent as such changes must have been, this is the first

instance of an attempt to have the apportionment altered when based on the return of the local assessor. The impracticability of the attempt has no doubt been foreseen. In such cases, either the municipality or the state and county must suffer loss, and it is more reasonable to impose the burden upon the municipality whose officer has made the error; allowance for the result of possible errors of the kind should be made in making up the municipal budget, for which contingency, among others, the statute authorizes the addition of ten per cent. to the amount appropriated for state, county, school district or local purposes."

The new legislation was referred to by Commissioner Jess of the Board of Equalization of Taxes in the case of *Borough of North Plainfield* v. *Somerset County Board of Taxation, State Board Tax Reports,* 1912-1934, *p.* 77, where he said:

"The purpose of this legislation was to provide a means by which a taxing district might be reimbursed for payments made to the state school and county funds, upon valuations which, subsequent to the fixing of their apportionment, were reduced on appeal. Formerly, as was pointed out in *Borough of Kenilworth* v. *Board of Equalization of Taxes, 74 Atl. Rep.* 480, the loss in such cases fell upon the taxing district, and could not be recouped. It was to remedy this condition that the act of 1910 was passed \* \* \*."

Taking advantage of this legislation, the borough of Roseland requested the Essex County Board of Taxation in estimating its share of county and state taxes for that year, to give it a credit for the year 1940 of the difference between the figure of public utility property valuations which entered into the determination of its county and state tax rates for the years 1936 and 1937 (*i. e.,* the valuations originally fixed by the Roseland assessor for those years, being $4,521,600) and the reduced figures fixed for such property by the State Tax Commissioner, upon the basis of which Roseland's share of the gross receipts taxes was actually apportioned. The Essex County Board, by a determination dated March 25th, 1940, held that the petition was filed too late to give that board any jurisdiction to allow the credit for the deductions prayed, and dismissed the application.

The appeal to this board from the county board determination is under *R. S.* 54:2-35; *N. J. S. A.* 54:2-35, providing that *any* action or determination of a county board may be appealed to the State Board of Tax Appeals.

The questions which are presented for determination are: .

(1) Is it too late to grant the relief prayed, as decided by the county board?

(2) May deductions be allowed under section 54:4-49, only for reductions in valuations directly ordered by a tax board or court, or may they be reductions ordered by the State Tax Commissioner *because of,* or *in pursuance* of a judgment of a tax board or court? It will be noticed that the year for which the State Board of Tax Appeals ordered a revaluation of public utility property, under the judgment hereinabove cited, was the year 1935, whereas the reductions by the tax commissioner, for which Roseland now asks deductions, were for the years 1936 and 1937. Counsel for the borough of Caldwell takes the position that if the reductions by the tax commissioner were actually in consequence of, or the proximate result of *a* State Board judgment, even for another year, the statute (54:4-49) is applicable. Counsel for the borough of Roseland contends that the statute is applicable regardless of whether there is any connection between the State Board judgment and the tax commissioner's reductions.

(3) Are reductions in valuations of public utilities, valued for gross receipts tax apportionment purposes, within the scope of section 54:4-49?

1. We consider first the question of limitations. It seems to us that the Essex County Board misconstrued the statute in this connection. There is nothing in the legislative scheme which indicates that it is incumbent upon the various taxing districts to make formal claims upon the county boards for deductions, under *R. S.* 54:4-49; *N. J. S. A.* 54:4-49, at any time. It was made the "duty" of the county boards to make the deductions, under the 1910 act, as a matter of course. These are the deductions which appear annually in column 9 of the abstracts of ratables made up by the county boards, under *R. S.* 54:4-52; *N. J. S. A.* 54:4-52. The Essex County

Board of Taxation never had its attention called to the reductions in public utility valuations made by the State Tax Commissioner, until the first Roseland petition was filed in 1938. That borough, it seems to us, was legally justified in expecting that the county board would give it the deductions requested, in the year 1939, as directed by the statute, and when it failed to do so, the borough was reasonably prompt in filing its petition in time to request the credit for the year 1940.

Reliance is had by the county board, however, in maintaining the view that it is too late to grant the relief prayed for, upon the following language in the section:

"* * * each county board of taxation * * * shall deduct from the total valuations of each taxing district * * * an amount equal to the ratables *of the preceding year or years* of such district, represented by the reductions in the assessments of such districts subsequent to the apportionment of the *preceding year or years,* in consequence of any appeal or appeals, &c. * * *"

The view taken by the county board is that the *second* reference to the phrase, "preceding year or years," is to *the year* chronologically preceding the year in which the petitioner requests a credit by way of deductions in ratables, and that therefore, since in the present case the borough of Roseland asks a deduction in the total of its revised ratables in the year 1940, it is precluded from asking credit for any past reductions made prior to the apportionment of state and county taxes in the preceding chronological year, 1939. This would rule out the reductions in valuations involved in the present case, as having been made in July, 1937. Stated in another form, the view under analysis would require that reductions made *in* July, 1937, no matter for what year, be claimed before the county board prior to its apportionment of state and county taxes, as revised and equalized, for the year 1938.

Careful scrutiny of the statute will show that the foregoing view is unsubstantiated by ordinary rules of statutory construction. The use of the identical phrase, "of the preceding year or years," in two connections within one section of an

act, reasonably imports that the legislature meant the same thing in the case of each reference. *Mickle* v. *Matlack* (*Supreme Court,* 1839), 17 *N. J. L.* 86; *Smith* v. *Minor* (*Supreme Court,* 1790), 1 *Id.* 16; *Waldron* v. *Rowe* (*Supreme Court,* 1917), 91 *Id.* 71; 106 *Atl. Rep.* 212. Had the *second* such reference, which qualifies the *time,* subsequent to which the reduction in assessment or valuation must have been made in order to be claimed for the current year, been intended to be limited to the one year immediately preceding, chronologically, the current year in which the deduction is requested, it would have been simple for the legislature to have so indicated by saying, in lieu of the language actually used:

"\* \* \* represented by the reduction or all reductions *made* in the assessments of such districts *subsequent to the apportionment of the year next preceding,* &c."

There certainly would have been no need to refer to "preceding *year* or *years.*" The contingency of reductions in assessments entered by an appellate board or court several years after their original assessment, is taken care of by the *first* reference in the act to, "preceding year *or years,*" which so refers to the ratables which are the subject-matter of deductions claimable under the section.

The second reference to "preceding year or years," must have the same connotation as the first identical such reference in the section, viz., to the year or years for which the valuation was originally made, the valuation having been reduced *subsequent thereto,* in consequence of an appeal or appeals. No other time limitation is set out in the section for such an application, and a statutory tribunal ought not to read one in, in its absence, upon any supposed ground of public policy. (We disregard also the public policy consideration in favor of our construction of the section, to wit, that the taxpayers of the taxing district should not be penalized by a failure of its fiscal officer to claim immediate credit from the county for reductions in valuations.)

It is further to be noted that on January 21st, 1938, the borough of Roseland did file its petition with the Essex County Board, asking that the deductions in question be made in the year 1938, and that the application was denied on May 3d,

1938, without assignment of any ground. Justification for such action might be found in the circumstance that immediately following the State Board's judgment in the *Hoboken* case, the city of Newark applied for a writ of *certiorari* to review the action of the State Board of Tax Appeals in setting aside as illegal the apportionment of gross receipts tax of the Public Service Electric and Gas Company, made by the State Tax Commissioner for the year 1935. The application of the city of Newark for such a writ was denied by the Supreme Court, April 15th, 1937, *City of Newark* v. *State Board of Tax Appeals et al.*, 15 *N. J. Mis. R.* 368; 191 *Atl. Rep.* 741. It was possible that some of the affected municipalities might seek to review the tax commissioner's valuations for the years 1936 and 1937, within eighteen months from September 20th, 1937 (time for issuance of *certiorari*), and therefore the Essex County Board may have felt justified in refusing to allow the deductions in 1938. But we can conceive of no justification for the continued denial of the claimed deductions in the year 1940.

We are of the opinion, accordingly, that the County Board erred in the conclusion stated in the determination appealed from, that it had no jurisdiction to grant the relief sought, because of the time limitation. As a matter of fact, there being no other objection, it had no excuse in failing to allow the deductions prayed, because the statute (section 54:4-49) provides that the county board *"shall deduct,"* &c. If a proper case for a deduction arises, an affirmative and mandatory duty is placed upon the county board to allow the credit specified in computing county and state taxes.

It is furthermore the law that where a public officer is directed to do a certain act by a certain time, without any negative words restraining him from doing it afterward, the designation of the time is only directory and not a limitation of authority. *Hugg* v. *Camden* (*Supreme Court,* 1877), 39 *N. J. L.* 620, 623. If, therefore, the statute contemplated that the Essex County Board of Taxation should allow a credit to the borough of Roseland for the reductions here in question, *in the first year after* the reductions were made (which would be in 1938), the failure of the County Board

to fulfill its duty in that regard *in that year,* would not excuse it from its obligation to the municipality affected, in a subsequent year, particularly where the latter calls its attention to the failure in performance of its statutory duty, and requests by petition that the credit be given in the subsequent year.

2. The next question is whether the statute, in providing for deductions on account of reductions made, "in consequence of any appeal or appeals to the county board of taxation or to the State Board of Tax Appeals," contemplates only reductions directly ordered by a judgment of a county or state board, or whether it will include such reductions as those made by the State Tax Commissioner in the Roseland case for the years 1936 and 1937, if shown to be actually "in consequence of," in the sense of, resulting proximately from, the State Board judgment ordering recertification of the 1935 valuations of public utility property, above referred to. It appears to us that the latter is the proper construction, for two reasons; first, if the legislature had intended the section to be limited to reductions *directly* ordered by county or state board judgments, it could have said so, in so many words. Instead, the more general language was used, "reductions in *consequence of any* appeal or appeals, &c." Secondly, the second construction is not only more in accord with the language used in the act, but will fully carry out the remedial purpose of the act in its fullest scope, *i. e.,* to do justice to those municipalities which have paid county and state taxes upon the basis of one set of valuations, but have *collected taxes* on the basis of a lower and reduced set of valuations.

3. The third question, whether reductions in public utility valuations made for purposes of apportionment of gross receipts taxes, are included in the phrase, "*ratables* represented by reductions made in the assessments," is squarely answered by the Supreme Court in *Read* v. *Board of Commissioners of Newark* (*Supreme Court,* 1926), 4 *N. J. Mis. R.* 203; 132 *Atl. Rep.* 314, where it was held that such public utility valuations must be considered in estimating the amount of any state tax to which municipalities are required to contribute, because of the provision of section 3 of *Pamph.*

*L.* 1919, *ch.* 25, providing for the apportionment of such taxes, to the effect that:

"Such valuations of said property in the respective taxing districts shall, notwithstanding the exemption of such property from taxation by reason of this act, nevertheless be included in and considered a part of the total amount of valuations of such respective municipalities for all other purposes, except the computation of the respective municipal tax rates."

The actual practice of the county boards of taxation in estimating county and state tax rates on a basis of valuations inclusive of the public utility valuations, is shown by the Essex county abstracts of ratables in evidence before us, and confirms the applicability in this case of the rule laid down in the *Read* case, *supra*. By parity of reasoning, reductions in public utility valuations are contemplated as reductions in assessments, for purposes of adjusting county and state rates, under *R. S.* 54:4-49; *N. J. S. A.* 54:4-49.

Finally, it remains to consider whether the borough of Roseland has established that the reductions made by the State Tax Commissioner actually were "in consequence of the appeal" to the State Board of Tax Appeals of the 1935 apportionment of public utility taxes. The alternative contention urged by counsel for Roseland, that any reduction by the State Tax Commissioner whether or not in consequence of an appeal to the State Board, must be credited under section 54:4-49, is, in our opinion, groundless. Counsel for the borough argues that the duties of the tax commissioner are inherited, so far as revision of public utility valuations under *Pamph. L.* 1919, *ch.* 25, are concerned, from the former State Board of Equalization of Taxes, which was the existing appellate tax body when *Pamph. L.* 1910, *ch.* 57, forerunner of *R. S.* 54:4-49; *N. J. S. A.* 54:4-49, was originally passed, and that *any* reduction made by the tax commissioner is the proper subject of a claim for deductions under *R. S.* 54:4-49; *N. J. S. A.* 54:4-49. The fallacy in this argument, however, is that even under *Pamph. L.* 1910, *ch.* 57, a right to deductions was allowable only for reductions "in consequence of any appeal or appeals * * * to the State Board of Equaliza-

tion of Taxes, &c.," and therefore it cannot be argued with any consistency that a reduction by the commissioner not in consequence of an appeal is properly a subject of deduction under *R. S.* 54:4-49; *N. J. S. A.* 54:4-49.

We accordingly come back to this question. Has the borough of Roseland shown any reductions in these valuations to be "in consequence of" the aforementioned appeal to the State Board of Tax Appeals, and of its judgment dated October 27th, 1936?

The original Roseland assessment figures of public utility property from 1934 to 1937, are as follows:

|                      |             |
| -------------------- | ----------- |
| 1934 Assessment      | $3,396,600  |
| 1935 Assessment      | 3,396,600   |
| 1936 Assessment      | 4,521,600   |
| 1937 Assessment      | 4,521,600   |

The judgment of this board in *Hoboken* v. *State Tax Commissioner,* hereinabove referred to, set aside the valuations and apportionment made by the tax commissioner for the year 1935, and ordered a new apportionment. The judgment directed that in the case of those taxing districts where the valuations certified by the assessors for the year 1935 were identical with those for 1934, including the case of the borough of Roseland, such valuations should be adopted by the commissioner in his reapportionment; but that where a different valuation had been certified for 1935 than for 1934, the commissioner should inquire into and revise said 1935 valuations, taking into account the valuations for 1934 (as of October 1st, 1933) and the inventories as of October 1st, 1933, as well as the inventories and property as of October 1st, 1934. The principle clearly implicit in this judgment is an endorsement by the board of the 1934 assessment figures. With this in mind, it is to be noted that, according to the records in the tax commissioner's office, he carried out the mandate of the State Board judgment by revising all of the figures for 1935, on July 29th, 1937 (apparently having waited until the disposition by the Supreme Court of the application by the city of Newark for a writ of *certiorari* from the judgment of the board, which took place on April

15th, 1937, as hereinabove pointed out). On the same date, July 29th, 1937, the commissioner entered his figures revising the assessor's valuations of these properties for the years 1936 and 1937. The final figures for the three years, all of which were recertified by the commissioner September 20th, 1937, are as follows:

| | |
|---|---|
| 1935 . . . . . . . . . . | $3,396,600.00 |
| 1936 . . . . . . . . . . . . . . | 3,397,827.78 |
| 1937 . . . . . . . . . . . . | 3,397,046.28 |

It seems to us that there is no fair alternative to the conclusion that the valuations thus arrived at for 1936 and 1937 (involving reductions from the original assessors' figures for those years in the aggregate of $2,248,325.94), being practically identical with the 1935 figure arrived at by the commissioner in obedience to the mandate of the State Board judgment, and made and certified on the same dates as the 1935 figure, were determined "in consequence of" the appeal of the 1935 apportionment to the State Board, and that therefore, so far as the borough of Roseland is concerned, its petition for a credit of $2,248,325.94 in estimating its county and state tax rate, should be granted.

With respect to the application of the borough of Caldwell, a different situation is presented. It, too, filed an application for deductions with the Essex County Board of Taxation, arising out of reductions made by the State Tax Commissioner in valuations of Public Service Company property, which, as in the case of the Roseland application, was denied by the County Board. Its application, however, includes a claim for reduction of the 1935 valuation, as well as in that for the years 1936 and 1937.

The Caldwell original assessment figures are:

| | |
|---|---|
| 1934 . . . . . . . . . . | $140,000 |
| 1935 . . . . . | 160,523 |
| 1936 . . . . . . | 185,000 |
| 1937 . . . . | 185,000 |

The valuations were reduced by the State Tax Commissioner as follows:

| | |
|---|---|
| 1935 | $140,000 |
| 1936 | 155,135 |
| 1937 | 158,050 |

It will be noted that the 1936 and 1937 figures arrived at by the commissioner, while made and certified on the same date as his 1935 valuation (the dates being identical with those in the Roseland case) are not anywhere near the 1934 assessment, which was approved in the judgment of the State Board. Nor is there any proof in the record which would show a change in the value or nature of the utility property situate in Caldwell, for the years 1936 and 1937, as compared with 1934 and 1935. Under the circumstances we must conclude that the borough of Caldwell has not shown that the reductions for the years 1936 and 1937 were "in consequence" of the appeal to the State Board in the 1935 case, and dismiss its claim for the reductions in those years. So far as the reduction in the 1935 valuation is concerned, a credit therefor is clearly allowable as resulting directly from the judgment of the State Board, cited *supra,* entered in the appeal of the 1935 apportionment.

Since the hearing of these applications the Essex County Board of Taxation has fixed the county and state rates for the year 1940. Judgment will therefore be entered herein ordering that the county board, in determining the amount of money to be raised in the boroughs of Roseland and Caldwell for state, state school, or county purposes for the year 1941, shall deduct from the total of revised, corrected and equalized ratables of said taxing districts, in addition to such other deductions to which they may be entitled, the following sums:

as to borough of Roseland ......... $2,248,325.94
as to borough of Caldwell ......... 20,523.00

Judgments accordingly.